HEARD NOVEMBER TERM, 1875.

## HEYWARD *vs.* WALKER.

A promise by the creditor to accept payment in Confederate currency if the debtor would make sale of certain real estate which had been mortgaged as security for the debt is on sufficient consideration.

Where a creditor was bound to accept payment in Confederate currency, an offer to pay on satisfaction being entered on the securities for the debt is no discharge of the debtor, nor is he discharged by the debtor's depositing the money in bank and keeping it there to his own credit.

BEFORE REED, J., AT CHARLESTON, JUNE TERM, 1875.

This was an action by Henry Heyward and W. C. Bee as executors of W. C. Heyward, deceased, against Jane Ann Walker, F. Richards and E. W. Edgerton.

The case was referred to H. E. Young, Esq., who submitted a report as follows:

This case was referred to me, by order of 24th February, 1873, to inquire into and report upon the law and facts of the same.

I beg to report the following as the facts of the case :

On the 11th November, 1856, Mrs. Jane Ann Walker, Frederick Richards, E. W. Edgerton, executed their joint and several bond to T. Grange Simons, conditioned for the payment of $3,000 on or before the 11th November, 1858, with interest payable semi-annually. Mrs. Walker was the principal, and Richards & Edgerton were sureties.

To secure this bond, Mrs. Walker mortgaged a house and lot in Wilson street, Charleston.

This bond and mortgage were on the 8th April, 1859, assigned "to Wm. C. Heyward, executor of Wm. Heyward, in trust for Mrs. Sarah Heyward."

Some time in the early part of 1863—no one fixes the date exactly, but apparently in February or March, 1863,—Mr. Richards, finding that by the depreciation of Confederate money the mortgaged premises would fetch a sufficient price to pay the debt then due to Col. Heyward, (Wm. C.,) applied to him to know if, in case he sold the house and lot, he (Col. Heyward) would accept the Confederate money in payment of this debt. Col. Heyward replied in the affirmative; and, trusting to this promise, Richards put the house and lot in the hands of Whitney, a broker, to sell them.

On 3d April, 1863, a sale was made to John Seigling for $3,500 Confederate money cash.

With the outstanding encumbrance, titles could not be made.

Col. Heyward, being absent in the Confederate army, had signed in blank all the bonds and mortgages held by him, except those in question, so that on payment satisfaction could be entered by Mr. Bee, his general agent; but by some accident these were not so signed.

After the sale of the house and lot, Mr. Richards never sought Col. Heyward to make the payment to him, but meeting Mr. Bee one day in the streets, told him he was ready to pay as soon as the mortgage, properly satisfied, was ready to be delivered. Mr. Bee told him it was not then signed; and this seems the end of Mr. Richards' efforts to obtain the conclusion of the arrangement during Col. Heyward's life.

After Col. Heyward's death, which occurred September 1st, 1863, Mr. Richards saw Mr. Bee and again expressed his readiness to pay; but Mr. Bee then said he, as executor of Col. Heyward, did not feel authorized to receive the Confederate money—which, of course, had then greatly depreciated.

On 1st June, 1863, Mr. Richards gave Mr. Seigling an obligation to make good his title, and Mr. Whitney then paid to Mr. Richards "a balance" of $2,064.43 in his hands from the sale of this and other property of Mrs. Walker. The inference from this is, that the other part of the money was paid previously; and as the sale was made on 3d April, I find, as a fair means of the payments, that Mr. Richards received the proceeds of the sale of the house and lot in question on 1st May, 1863. There was then due to Col. Heyward on said bond $3,266.17, which Col. Heyward had agreed to receive in Confederate money. Mr. Richards deposited the funds received from the sale of the house to his general credit, being abundantly able then to meet the claim.

Nothing further was done till the *cestui que trust* of Col. Heyward instructed his executors to call in this bond, and hence this suit.

As my conclusions of law, I beg to report:

That Col. Heyward, by his promise to Mr. Richards to receive Confederate money for his bond if he sold the lot, was bound so to do; and Mr. Richards, on the faith of this promise, parted with his security and is thus much injured. Consequently neither Col. Heyward nor his executors could recede from the engagement to receive Confederate money, despite of its rapid depreciation, without due notice to Mr. Richards, and this notice was never given.

Mr. Richards' duty as debtor was to seek his creditor and tender him the money, unless relieved therefrom by some act of Col. Heyward.

He never did make the tender, but when Mr. Bee, as executor, told him, in reply to his declaration that he (Mr. Richards) was ready to pay, that he (Mr. Bee) did not feel authorized to receive it if tendered, this relieved him of the obligation to make a formal tender.

But on 1st May, 1863, Mr. Richards received, to be applied to the payment of Col. Heyward, $3,266.17 in Confederate money, and worth then, according to the Act of the Legislature, in good money, $859.51, and deposited it to his own general credit,—that is, to the credit of Edgerton & Richards. This made it their debt, and, as they acted for Mrs. Walker, also her debt. They cannot have both the mortgage satisfied and retain this money, which, as they made no special deposit of it, was at their risk.

I therefore respectfully recommend, that on payment by Mrs'
Walker or Messrs. Edgerton & Richards of the sum of $859.50,
with seven per cent. interest to day of payment, to Messrs. Bee and
Heyward, executors, they may be required to surrender the bond
of defendants held by them, and also the mortgage, after having
entered satisfaction on the mortgage.

E. W. Edgerton and Frederick Richards, defendants, excepted
to the report on the grounds, and because;

1. That it appears from the testimony, as well as from the facts
found by the Referee, that Richards was ready to pay, and so in-
formed Bee, the agent of Heyward, in the latter's lifetime, and as
early as June, 1863, and that Bee told Richards the bond and mort-
gage were not signed by Heyward. Therefore, as notice to the agent
is notice to the principal, it was incumbent on Bee to perform, or
have performed, that which Heyward had agreed and undertaken
to do, namely, satisfy the bond and mortgage; for Heyward knew
a sale and conveyance of the mortgaged premises could not be prop-
erly effected without a removal of the mortgage thereon.

2. That in confirmation of the above, it also appears by the re-
port that Whitney, the auctioneer who made the sale, applied to
Heyward prior to the sale with respect to his bond and mortgage,
and was informed that Bee would receive the sales money when-
ever it was ready to be paid.

3. That this is not a strict case of debtor and creditor, but one
in which the creditor had made a new contract with the debtor
founded on a new and valid consideration, and one which, by the
report itself, entitled him to its specific performance, and on the
strength of which the debtor was induced to enter into an obligation
with a third person touching the property in controversy.

4. That this is a clear case of dependent covenants or mutual
conditions, to be performed concurrently, for it appears by the
testimony that the fair intent and good sense of the contract was
that the money was not to be paid until the satisfaction and sur-
render of the bond and mortgage.

5. That the report is in other respects contrary to law and the
evidence.

REED, J. After hearing arguments of counsel for both plaintiffs
and defendants, it is ordered, adjudged and decreed that the report

of Henry E. Young, Esq., Special Referee, to whom this cause was referred by order of the Court on the 24th February, 1873, to inquire and report upon the facts and law of the same, filed on the 29th November, 1873, be confirmed and the exceptions thereto overruled. And it is further ordered that the plaintiffs do have leave to enter judgment upon the said report, for the amount therein found to be due, principal and interest, together with the costs of the said action. And it is further ordered, that upon payment of the amount so found due, principal and interest and costs, by the defendants, the plaintiffs shall surrender the bond and mortgage held by them, after having entered satisfaction upon the said mortgage.

*Campbell & Whaley,* for appellant:

The appeal in this case is based on the exceptions to the report. They were overruled.

William Heyward, deceased, the testator of the respondents, held the bond of the appellants executed before the war. It was secured by a mortgage of real estate. Some time in the early part of 1863, the appellant, Richards, finding an opportunity of paying the debt by sale of the mortgaged premises, applied to Heyward, the holder of the bond, to learn of him whether he would take Confederate money in payment thereof. He agreed to do so; whereupon the matter was placed in the hands of a broker (Whitney) for sale. On 3d April, 1863, a sale was made to Seigling for cash, in Confederate money. Whitney was the agent of both parties, and he applied to Heyward to know what he should do with the money. He replied that Mr. Bee would receive the money, and he (Heyward) would send the papers to Bee. Whitney called on Bee, who informed him that Heyward had not sent the bond to him, and that he would write to Heyward about it. Bee has no recollection of this interview. But he did testify that, by accident, Heyward did not "sign the bond and mortgage due by Mrs. Walker." Mr. Bee also testified: "When Mr. Richards offered me the money for the bond, I told him that the mortgage was not signed, and, consequently, he could not get satisfaction. Mr. Heyward came down afterwards, but did not sign the mortgage satisfaction."

I. This is not the case of debtor and creditor merely. The first contract was modified by the obligee of the bond agreeing to take something else than the money in satisfaction of his bond.

That Confederate treasury notes are not money appears from the case of *Planters' Bank* vs. *Union Bank.*—16 Wall., 483. At page 501 the Court declare as follows: "We do not controvert the position that, generally, a bank becomes a debtor to its depositors by its receipt of money deposited by him, and that money paid into a bank ceases to be the money of the depositor, and becomes the money of the bank, which it may use, returning an equivalent, when demanded, by paying a similar sum to that depositor. Such is undoubtedly the nature of the contract between a depositor and his banker. So, also, a collector of bank orders only becomes the owner of money collected by it for its correspondent, and, consequently, a debtor for the amount collected, under obligation to pay on demand, not the identical money received, but a sum equal in value."

"But, it is to be observed, this is the rule where *money* has been deposited or collected, and when there has been no contract or understanding that a different rule should prevail. The circumstances of the present case are peculiar. It seems to have been admitted in the Court below that the deposits had been made in Confederate currency, and that the collections were made in like currency with the assent of the plaintiffs.    *    *    *    The Union Bank then became the agent of the plaintiffs to receive and collect, not money, but Confederate notes or promises, and the obligation it assumed was to pay Confederate notes when they would be demanded. The subject of the contract was a commodity, and there was no default in the Union Bank until demand was made and refused. And, from the nature of the transaction, it is to be inferred that the intent of the parties was that one should impose and the other assume only a liability to return to the plaintiffs notes of the Confederate government like those received or collected—notes promising to pay a like sum. And it is not perceived that the effect of the assumption is changed by the fact that the defendants used the notes received in their personal business, if they did use them prior to any demand for the fulfillment of the undertaking."

The law of tender applicable to ponderous articles other than money is not the same as that applicable to money, as further appears from the case of *Slingerford* vs. *Morse.*—8 John., 474. The effect of a tender of a commodity is a complete bar to the suit upon the contract. The Court, at page 478, say: "The delivery of the goods was a thing collateral to the obligation, as the books term it,

and by tender and refusal the plaintiff shall never be entitled to the money. Here was no *precedent* debt or duty. He must resort to the specific articles tendered, and the person in whose possession they are holds them as his bailee and at his risk."

II. The tender of the money or commodity was *waived*.

There was no actual tender or check. This Richards himself says. But when he spoke to Bee he had the Confederate notes in bank. That no actual tender was expected by Bee appears from his own testimony, when he speaks of Richards having " offered the money for the bond." This he afterwards corrected ; but it shows the nature of the transaction between the parties. To take advantage of the non-production of the Confederate notes without putting Richards on his guard would be a surprise, and in its effect operate a fraud on him, which is not to be imputed to any party to the transaction. Bee knew that Heyward had not signed the satisfaction, so as to enable Richards to complete the sale and transfer a valid title. This it was incumbent upon Heyward to do, and this Bee knew ; yet he took no steps to have the paper signed. Bee testifies that Heyward came down after this interview between Richards and himself. Here was the opportunity neglected which has caused the loss. Now, where one of two innocent persons must suffer, he who is the occasion of the loss must bear it.

The contract was to pay Confederate States notes, and the appellants had them ; there was no dispute about his readiness or ability to pay, and, if a tender were necessary, the facts of this case show a waiver on the part of the respondent.

In *Ashburn* vs. *Poulter*, (35 Conn., 553,) the defendant said : " I am now ready to pay you the $17.85 which I owe you," and he had money with him sufficient to pay the debt. The plaintiff replied : "There have been costs made, and you have got to settle with my attorney." It was held that the right of the plaintiff to have the money actually produced and presented to him was waived by the reply he made to the defendant. Here, Richards is ready to pay; it is Bee who prevented the payment by remarking that the bond and mortgage are not signed.

Again: When Whitney calls to pay, Bee again says the bond is not signed yet; Mr. Heyward, who had been absent from the city when his agent was applied to, had, according to the agent's testimony, come to the city, yet he does not, and had not to the time of his death, from April, 1863, to September, 1863, signed and per-

formed his part of the contract. If the object was to defeat the performance of the contract between Richards and Heyward, it could not have been more successfully performed than by the failure of the plaintiffs to sign the satisfaction or to assign the mortgage security.

If liability is to be enforced against appellants, they are remediless against the purchaser from them, who holds their obligation for title predicated upon the performance by Mr. Heyward of his contract with Richards.

In *Thorne* vs. *Mosker*, (20 N. J. Eq., 257,) A offered to pay money to B, holding her purse in her hand in sight of B, who saw the purse but not the bills. A opened the purse, and was in the act of taking out the bills, but she stopped on account of the refusal of B to receive the same money. It was held that the offer was neither payment nor tender, but the refusal was an excuse for not making the tender.

The acts to be performed by Richards and Heyward respectively were mutual and dependent, the one upon the other. Richards could not give title without Heyward's removing the encumbrance. Richards at least was ready and able, and the consummation of the contract was defeated by Heyward, who was not ready, and upon him the loss must fall.

*McCrady & Son,* contra, submitted the following points and authorities:

1. That W. C. Heyward was not bound by his assent to the sale for Confederate money, as it was virtually an agreement to take less for his debt than was due.

2. That, at all events, where Confederate money was depreciating daily, good faith required an immediate sale and immediate payment; whereas the sale was not prompt and the payment never made.

3. That it is plain that Edgerton & Richards continued to hold and use the money during the rest of the lifetime of W. C. Heyward, and it perished in their hands, and must be their loss.— *Williamson* vs. *Bacot,* 1 Bay, 62.

4. That no tender was ever made either to Heyward in his lifetime or to his executors after his death.

A tender is not good unless the person making it declares upon what account it is made.

2. It is not enough for the person who intends to make a tender to say I am ready to pay the debt, or to perform the duty, but he must make an actual offer to pay the one or to perform the other.

3. The mortgagor said to the mortgagee, I am here ready to pay you the money due upon the mortgage, but at the same time kept the money, which was in a bag, under his arm. This was holden not to be a good tender.—Bacon's Abgmt. "Tender," §§ 1, 2 and 3.

5. That the debtor, if he wishes to pay, even to stop interest, must seek his creditor, and not leave his creditor to hunt him.—Story on Bills of Ex., § 325, note 1 to p. 401; rule recognized in *Blake* vs. *Quash, executor*, 3 McC., 344.

January 25, 1876. The opinion of the Court was delivered by

Moses, C. J. A sufficient consideration to sustain the agreement between Mr. Richards and Colonel Heyward is found in the fact and circumstances which induced it. The one was led, on the faith of the promise of the other, to part with the security which he could have subjected to the payment of the debt of his principal, on which he was surety, the effect of which was a prejudice to his own interest. The inquiry whether notes of the Confederate government are to be treated as money and subject to the rules which apply to a tender of it, is not pertinent to the case before us. No matter in what light such currency is to be regarded, the parties by their contract stipulated that through the sale of the mortgaged premises it would be accepted in payment of the debt due to Colonel Heyward, and they are bound by their agreement.

If the bond or mortgage could only have been discharged by an entry of satisfaction on their face, the appellants might possibly claim that the omission of the payment was not the fault of Mr. Richards. A simple receipt, however, for the amount due would have as fully protected the obligors of the bond and the purchaser of the premises as the most formal entry of satisfaction which could have been rendered on both instruments. Mr. Bee, the agent of Colonel Heyward, held all his bonds and mortgages, signed in blank, so that on payment satisfaction could at once be entered. By some accident this bond and mortgage had not been so signed. The agreement of Colonel Heyward and the willingness both of himself and agent to accept Confederate notes are not denied; but it appears by the report of the Referee that Mr. Richards said to

the latter, on a casual meeting, "that he was ready to pay as soon as the mortgage properly satisfied was ready to be delivered." He thus made the entry of satisfaction on the mortgage a condition precedent to the payment, and when informed that it had not been signed, so that satisfaction could be acknowledged, he does not appear to have made any further exertion, either by offering payment or taking any step in the lifetime of Colonel Heyward to have the business concluded, though after his death he did express to his executor his readiness to pay in Confederate money, which the executor did not feel authorized then to accept.

Mr. Richards, to the filing of the complaint by the respondents on the 27th of March, 1872, resorted to no proceeding to have the contract between himself and Colonel Heyward executed according to its terms. Both parties are entirely innocent of any intentional wrong, and in this condition the loss should fall upon the one who has caused it by his want of activity in executing an agreement in the result of which he had so large an interest. His laches is not to operate to his own benefit and to the prejudice of the other party, who was not bound to deliver the bond and mortgage satisfied until the currency which he had agreed to accept was actually paid. If the questions were to be determined only by the effect of the notice of the executor that Confederate notes would not be received by him in payment, the principles applicable might be different; but the money which, according to the report, Mr. Richards received from the purchaser, Mr. Seigling, in May, 1863, should have been offered in payment to Colonel Heyward, or some cause shown which would have excused Mr. Richards from the duty which, in our judgment, the agreement imposed upon him. Not a single step was taken to that end. So far from Mr. Richards regarding it as the money of Colonel Heyward, he deposited it in the bank to his own general credit, subject to his own contract, and from the day he received it neither Colonel Heyward nor his executors were at liberty in any way to interfere with it by reason of any act on the part of Mr. Richards showing a devotion of it to the agreement on which he now refuses to discharge him from the payment of the bond.

The motion is dismissed.

*Willard,* A. J., and *Wright,* A. J., concurred.